EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* JOSÉ A. HERNÁNDEZ OLMO, acusado y peticionario.

*Número:* O-76-234 *Resuelto:* 29 de septiembre de 1976

238

*Jorge A. Vela Vélez,* abogado del acusado y peticionario; *Miriam Naveira de Rodón, Procuradora General,* y *Mario L. Paniagua, Procurador General Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El recurrente fue acusado por causar la muerte de un ser humano mientras conducía con imprudencia crasa, y por conducir bajo los efectos de bebidas embriagantes (9 L.P.R.A. sec. 1041). En la acusación por imprudencia se le imputó el delito definido por el Art. 87 del Código Penal (33 L.P.R.A. sec. 4006) así:

Art. 87—Imprudencia crasa o temeraria al conducir vehículo de motor.

"Cuando en la muerte ocasionada por una persona al conducir un vehículo de motor mediare imprudencia crasa o teme-

raria, se impondrá pena de reclusión por un término mínimo de un año y máximo de 5 años.

La imprudencia crasa o temeraria es aquella de tal naturaleza que demuestra un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daños a éstos y no significa una mera falta de cuidado."

El juicio se vio ante un jurado y al finalizar la prueba la defensa solicitó instrucción de un posible veredicto por el delito menor de homicidio involuntario declarado en el Art. 86 del Código Penal (33 L.P.R.A. sec. 4005) de este modo:

Art. 86—Homicidio involuntario

"Toda persona que obrando con negligencia o que al realizar un acto ilegal que no constituyere delito grave, ocasionara la muerte a otra, será sancionada con pena de reclusión por un término que no excederá de tres años o multa que no excederá de tres mil dólares o ambas penas a discreción del Tribunal.

Cuando el homicidio involuntario se cometa por una persona al conducir un vehículo de motor, se le impondrá pena de reclusión por un término mínimo de 6 meses y máximo de 5 años.

No empece lo dispuesto en la sec. 3044 de este título, el delito de homicidio involuntario según expuesto en la presente sección se considerará delito menos grave y el acusado tendrá derecho a juicio por jurado."

El Tribunal Superior denegó la solicitud de la defensa e instruyó al jurado sobre dos únicos veredictos: culpable de infracción al Art. 87 del Código Penal o no culpable. El jurado trajo un veredicto unánime de culpabilidad por homicidio involuntario. (1) El juez aceptó el veredicto, lo pasó a la secretaria para su lectura y dictó fallo declarando al acusado culpable y convicto del delito de homicidio involuntario. En ese punto se percata del error, envía al jurado a deliberar nuevamente ajustándose a las instrucciones y se produce un

---

(1) No se discute ni puede especularse si influyó en el veredicto excluido de las instrucciones, el error de la secretaria de sala que al llenar el título del caso en la hoja de veredicto, donde el impreso dice Por: escribió "Homicidio Involuntario" y así le fue entregada al Presidente del jurado.

segundo veredicto por imprudencia crasa (Art. 87 CP) con votación de 9 a 3 que aceptó el juez y procedió a dictar nuevo fallo de convicción. También encontró al acusado culpable por guiar en estado de embriaguez y lo sentenció a 15 días de cárcel. (²) Al recurrir en *certiorari* el convicto pendiente de sentencia en el caso por infracción al Art. 87, Código Penal, expedimos orden para mostrar causa (³) por la que no deban anularse las actuaciones de instancia.

## I

■ Lo ocurrido con el primer veredicto de homicidio involuntario no puede tomarse como lapsus linguae susceptible de corrección instantánea. La actuación del juez le dio vida y perfección de veredicto aceptado al adentrarlo de tal modo en el proceso, recibiéndolo y enterándose, pasándolo a la secretaria de sala para su lectura y dictando fallo de convicción, que creó un estado de derecho irreversible. Había terminado el juicio.

---

(²) Alternativa de reclusión para este delito que 9 L.P.R.A. sec. 1042 castiga en primera infracción con multa de $100 a $500, cárcel de 5 días a 6 meses, o ambas penas a discreción.

(³) El texto completo de nuestra orden (27 de mayo de 1976) es el siguiente:

"Enjuiciado el acusado-apelante por infracción al Art. 87 del Código Penal (muerte ocasionada por imprudencia crasa al conducir un vehículo de motor) y producido un veredicto unánime de culpabilidad por homicidio involuntario (delitos menos grave definido en el Art. 86 del Código Penal) que fue aceptado por el juez y dictó fallo de convicción basado en el mismo, acción que luego dejó sin efecto ordenando al jurado que deliberara nuevamente guiándose por las instrucciones que no comprendían la alternativa de homicidio involuntario, regresó el jurado a sala con un segundo veredicto 9 a 3 de culpabilidad por el delito mayor definido en el Art. 87 del Código Penal que también aceptó el juez y dictó segundo fallo de convicción por el delito mayor, sentenciando al acusado además a 15 días de cárcel sin informe pre-sentencia en una infracción de la sec. 5-802(e) de la Ley de Tránsito, exigido por 9 L.P.R.A. sec. 1042(e), tengan las partes plazo hasta el 25 de junio de 1976 para comparecer a mostrar causa por la que no deban anularse las actuaciones de instancia posteriores al primer veredicto, y restablecer el de Homicidio Involuntario (Art. 86 Código Penal) por el que deberá sentenciarse al apelante; y revocarse, además, la sentencia por infracción de la Ley de Tránsito."

█ Las Reglas de Procedimiento Criminal facultan al juez para ordenar al jurado que reconsidere un veredicto erróneo producto de una equivocación del jurado al aplicar la ley (RPC 148) o un veredicto defectuoso que no permita entender con razonable claridad la decisión del jurado respecto a culpar o absolver (RPC 149) pero ambas reglas(4) colocan dicha orden para ulterior deliberación antes de que el veredicto sea aceptado. La aceptación del veredicto por el tribunal surge del texto de las citadas reglas como punto final(5) a la intervención del jurado en el proceso, y cierre de la función deliberativa. Se concreta con esa aceptación del veredicto la exposición del acusado a ˙castigo, y excluye ulterior riesgo. Art. II, Sec. 11, Constitución del Estado Libre Asociado. Por tanto, el segundo veredicto contra el recurrente por infracción al Art. 87 del Código Penal, es nulo. Resta resolver si el primero por homicidio involuntario, contrario

---

(4)

REGLA 148. JURADO; VEREDICTO; RECONSIDERACIÓN ANTE UNA ERRÓNEA APLICACIÓN DE LA LEY.

"Si al rendirse un veredicto de culpabilidad el tribunal considerare que el jurado se ha equivocado en la aplicación de la ley, el juez que lo presida podrá explicar al jurado sus razones y ordenarle que vuelva a considerar el veredicto. Si después de esto se rindiere el mismo veredicto, éste será aceptado por el tribunal. Nada de lo aquí dispuesto será aplicable a un veredicto absolutorio el cual deberá ser aceptado siempre por el tribunal."

REGLA 149. JURADO; RECONSIDERACIÓN DE VEREDICTO DEFECTUOSO

"Si el veredicto fuere tan defectuoso que el tribunal no pudiere determinar la intención del jurado de absolver o condenar al acusado por el delito bajo el cual el acusado pudiera ser convicto de acuerdo con la acusación, o no pudiere determinar en qué cargo o cargos el jurado quiso absolver o condenar al acusado, el tribunal podrá instruir al jurado para que reconsidere dicho veredicto y exprese claramente su intención. Pero si el jurado persistiere en rendir el veredicto defectuoso, tal veredicto será aceptado, y el tribunal dictará un fallo absolutorio."

(5) La finalidad que al veredicto imparte su aceptación por el tribunal fue reconocida en el lenguaje de *Pueblo* v. *Sabater Mangual,* 95 D.P.R. 597, 601 (1967), al resolver que ". . . el veredicto rendido *no era final ya que aún no había sido aceptado* por el tribunal . . . ." (Énfasis suplido.)

a las instrucciones del tribunal, puede sostenerse. En las particulares circunstancias de este caso debe prevalecer.

 Los delitos declarados por los Arts. 86 y 87 del Código Penal comparten un elemento común de negligencia criminal y los diferencia el grado o intensidad de esa negligencia que es cuestión a estimar exclusivamente por el jurado juzgador de los hechos. Dispone la Regla 147 de Procedimiento Criminal que el acusado podrá ser declarado culpable de la comisión de cualquier delito inferior necesariamente comprendido en el delito que se le imputa. Se ha resuelto por el Supremo de los Estados Unidos que "En un caso donde algunos de los elementos del delito por el cual se acusa también constituyen un delito menor, el acusado, si la evidencia lo justifica, tendrá sin duda derecho a una instrucción que permita un veredicto por el delito menor." *Berra* v. *United States,* 351 U.S. 131, 134 (1956); 100 L.Ed. 1013; *Pueblo* v. *del Valle,* 91 D.P.R. 174 (1964); *Pueblo* v. *Medina Ocasio,* 98 D.P.R. 302 (1970); *Pueblo* v. *Figueroa Figueroa,* 100 D.P.R. 213 (1971).

 La aceptación del veredicto, a la que hemos reconocido validez y efecto de poner fin al proceso deliberativo del jurado, surte también el efecto de aprobación demorada de la instrucción de homicidio pedida por el acusado. Al aceptar el veredicto de homicidio el tribunal implícitamente reconsideró su resolución denegatoria de la instrucción especial y sostuvo la facultad estimativa del jurado en la adjudicación del grado o clase de negligencia en que incurrió el acusado. A su vez el magistrado, llegado el momento de dictar sentencia, habrá de estimar el grado de negligencia al imponer la pena dentro de la sanción dispuesta para el homicidio involuntario. (⁶)

---

(⁶) La pena por homicidio involuntario, clasificado como delito menos grave, no está regulada por la disposición del Art. 58 del Código Penal sobre sentencia indeterminada. *Cf.* RPC 178.

Si bien el recurrente no tuvo un juicio perfecto, la ley se conforma con uno justo. Eliminado el segundo veredicto, la irregularidad técnica no alcanza la raíz esencialmente sana del proceso, en que doce pares del acusado deliberaron y determinaron su culpabilidad, no una sino dos veces.

## II

El recurrente fue convicto por hechos coetáneos al accidente fatal, de infracción a la Sec. 5-801 de la Ley de Vehículos y Tránsito (9 L.P.R.A. sec. 1041) que dispone: "(a) Será ilegal que cualquier persona bajo los efectos de bebidas enbriagantes conduzca o tenga el control físico y real de cualquier vehículo de motor." El siguiente Art. 5-802 (e) (9 L.P.R.A. sec. 1042) instruye que "Antes de dictar sentencia, a cualquier persona convicta por infracción a las disposiciones de la sec. 1041 de este título o el inciso (b) de esta sección el tribunal ordenará a la División de Probatoria de Adultos de la Administración de Tribunales que se efectúe una investigación minuciosa y se le rinda un informe dentro de los treinta (30) días siguientes a la orden. Dicho informe incluirá los antecedentes e historial de la persona convicta en relación con el uso de bebidas embriagantes que le permita determinar si dicha persona se beneficiaría del programa de 'rehabilitación establecido y aprobado' por el Departamento de Salud en coordinación con el Departamento de Transportación y Obras Públicas. Disponiéndose, que para los efectos de esta sección, 'rehabilitación' significará cualquier tipo de tratamiento, orientación, consejería, asesoramiento o cualquier otra clase que determine el organismo a cargo de la rehabilitación." [7]

---

[7] Más adelante en dicho Art. 5-802 se dispone:

"(f) Si del informe rendido por el Oficial Probatorio se determina que la persona no ha sido convicta anteriormente por infracción a la sec. 1041 de este título y que no es un bebedor problema, el Tribunal dictará sentencia de acuerdo a las penalidades dispuestas en los incisos (a) y (b) de esta sección según sea el caso. Disponiéndose que la licencia de condu-

■ Este procedimiento tiene las mismas características esenciales y los mismos fines rehabilitadores de la Ley de Libertad a Prueba (34 L.P.R.A. sec. 1027). Cuando el delito de conducir en estado de embriaguez se produce contemporáneamente con y surge de los mismos hechos de un delito mayor, la investigación e informe sobre la conducta del acusado provistos en este Art. 5-802 de la Ley de Vehículos y Tránsito quedan supeditados a la decisión del juzgador respecto a referir el caso mayor al Administrador de Corrección cuyo informe puede solicitar para dictar sentencia. Art. 2, Ley de Libertad a Prueba enmendada por Ley Núm. 119 de 22 de julio de 1974 (34 L.P.R.A. sec. 1027). Si así decide el juez, el acusado tendrá el beneficio de la investigación provista por la Ley de Vehículos y Tránsito. Si por el contrario, el caso no es referido para probatoria por evidenciar las circunstancias en que se cometió el delito que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiere la reclusión de dicha persona en alguna institución penal; o si en definitiva no se suspende la sentencia en el delito mayor, queda excluida, por principio y por consideraciones prácticas, toda posibilidad de suspensión

---

cir le será suspendida hasta tanto dicha persona participe y apruebe el curso de mejoramiento para conductores establecido por el Departamento de Transportación y Obras Públicas. Para los efectos de esta sección, 'bebedor problema' significará toda persona que admita voluntariamente su condición de alcohólico, o que haya sido objeto de un diagnóstico médico como tal, o que presente dos (2) ó más de las siguientes características: (a) historial de contactos previos con agencias de servicios sociales o médicos debidos a problemas con la bebida, (b) informes sobre dificultades de índole marital, financiera o de trabajo a causa de uso del alcohol, (c) uno o más arrestos previos por ofensas relacionadas con el alcohol, (d) nivel de alcohol en la sangre al momento del análisis igual al establecido por la sec. 1041 de este título como presunción legal de embriaguez.

"(g) Si el informe requerido bajo el inciso (e) de esta sección demostrare que la persona necesita del programa de rehabilitación establecido por el Departamento de Salud, el Tribunal dictará sentencia y suspenderá la ejecución de la misma siempre y cuando dicha persona acepte participar voluntariamente en el programa de rehabilitación."

de ejecución de la sentencia y subsiguiente programa de "re-habilitación" en el delito menor de conducir en estado de embriaguez.

No habiéndose dictado sentencia en el caso de homi-cidio involuntario, desconocemos si el juez se propone sus-pender sus efectos bajo un régimen probatorio o si dicha alternativa está excluida por la prohibición de dicho bene-ficio a los convictos por tal delito mientras se conduce en estado de embriaguez. Art. 2, Ley de Libertad a Prueba (Núm. 259 de 3 de abril de 1946) enmendada por la Ley Núm. 119 de 22 de julio de 1974 (34 L.P.R.A. sec. 1027, Supto. 1975, pág. 6). *La sentencia de 15 días de cárcel en el caso de Tránsito se dejará sin efecto y devuelto el caso para que se dicte nueva sentencia coordinada con la que ha de dictarse por homicidio involuntario. Se remite el caso a la sala de instancia para continuación de procedimientos consis-tentes con esta opinión. Revocada.*