EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>David Plaza Plaza<br><br>Recurrido | Certiorari<br><br>2017 TSPR 188<br><br>198 DPR ____ |

Número del Caso: CC-2016-710

Fecha: 1 de diciembre de 2017

Región Judicial de Ponce y Aibonito

Oficina del Procurador General:

     Lcdo. Luis Román Negrón
     Procurador General

Abogados de la parte recurrida:

     Lcdo. Edgardo Luis Rivera Rivera
     Lcda. Wanda Aponte Torres

Materia: Derecho Penal Sustantivo – Al eliminarse la clasificación de grados en el Código Penal de 2012, no se afectó la disposición de la Ley de Sentencia Suspendida y Libertad a Prueba que excluye el delito de homicidio negligente del beneficio de sentencia suspendida.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                  CC-2016-0710        *Certiorari*

David Plaza Plaza

    Recurrido

Opinión del Tribunal emitida por la Jueza Presidenta Oronoz Rodríguez

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

Nos corresponde precisar el alcance de la prohibición de creación de delitos o penas por analogía que establece el principio de legalidad. A su vez, debemos aclarar el marco operacional del principio de especialidad cuando están en conflicto una ley especial y una disposición general del Código Penal. En particular, debemos resolver si, al eliminarse la clasificación de grados en el Código Penal de 2012, se afectó la disposición de la Ley de Sentencia Suspendida y Libertad a Prueba (en adelante, Ley de Sentencia Suspendida), que excluye al delito de homicidio negligente del beneficio de sentencia suspendida. Entendemos que no.

A continuación, reseñamos brevemente los hechos pertinentes del caso que nos ocupa.

I

Por hechos ocurridos el 11 de diciembre de 2013, el Ministerio Público presentó una acusación contra el Sr. David Plaza Plaza (recurrido) por el delito de homicidio negligente, en su modalidad de ocasionar una muerte al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás. Artículo 96 del Código Penal de 2012, 33 LPRA sec. 5145. El 14 de septiembre de 2015, un Jurado halló culpable al recurrido. Consecuentemente, fue sentenciado a una pena de ocho años de reclusión. Sin embargo, el Tribunal de Primera Instancia suspendió los efectos de la pena de reclusión y ordenó que esta se extinguiere bajo el privilegio de libertad a prueba.

En desacuerdo con que se le otorgue el privilegio de libertad a prueba, el Ministerio Público presentó una *Solicitud de Corrección de Sentencia al amparo de la Regla 185 de las de Procedimiento Criminal*. Alegó que la Ley de Sentencia Suspendida excluye del beneficio de libertad a prueba a los convictos de homicidio negligente. En cambio, el recurrido planteó que lo que excluye el Artículo 2 de la Ley de Sentencia Suspendida, 34 LPRA sec. 1027, es el homicidio negligente con clasificación de delito grave de tercer grado. Sostuvo que al eliminarse el sistema de grados en el 2012 ese delito (homicidio negligente de tercer grado) dejó de existir. Por lo tanto, si se excluyera el homicidio

negligente del Artículo 96 del beneficio de libertad a prueba se estaría aplicando una ley penal por analogía, en violación al principio de legalidad.

El foro primario denegó la solicitud de corrección de sentencia. Razonó que adoptar la postura del Ministerio Público implicaría una "legislación judicial", pues el beneficio de sentencia suspendida se excluyó para el homicidio negligente de tercer grado y no para el homicidio negligente del Código Penal de 2012. Así, concluyó que le corresponde a la legislatura atemperar las leyes penales especiales a las disposiciones del Código Penal.

Inconforme, el Estado presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Sostuvo que el delito de homicidio negligente permanece excluido del beneficio de sentencia suspendida, pues lo esencial es la conducta que el legislador quiso excluir; en este caso, ocasionar la muerte a una persona al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás. Por su parte, el recurrido desarrolló su argumento de prohibición de interpretaciones por analogía. Además, señaló que el Tribunal Supremo ha reiterado que las leyes penales deben interpretarse restrictivamente en lo que desfavorezcan al acusado.

En una decisión dividida, el Tribunal de Apelaciones confirmó el dictamen recurrido. Señaló que acoger la postura del Estado violaría el principio de legalidad, pues constituiría una interpretación analógica impermisible

excluir de los beneficios de la ley a un delito semejante pero no establecido en la ley. También destacó que, en virtud del principio de especialidad, la parte general del Código Penal suple las lagunas de las leyes especiales. Así, acudió al Artículo 64 del Código Penal, 33 LPRA sec. 5097, según enmendado por la Ley Núm. 246-2014, el cual restableció la discreción de los tribunales de conceder el beneficio de libertad a prueba a convictos de delitos graves en su modalidad negligente, entre otros. Por consiguiente, concluyó que el foro primario podía imponer una pena alterna de libertad a prueba.[1]

Insatisfecho, el Estado presentó un recurso de *certiorari* ante este Tribunal. Tras evaluar los argumentos, expedimos el recurso. Oportunamente, las partes presentaron sus respectivos alegatos en los que reiteran sus planteamientos. Con el beneficio de la comparecencia de ambas partes, resolvemos.

## II

### A. Principio de legalidad

El principio de legalidad representa un límite al poder punitivo del Estado.[2] En esencia, el principio de legalidad

---

[1] Por su parte, el Hon. Roberto Sánchez Ramos, Juez de Apelaciones y miembro del panel, emitió una Opinión disidente. Expresó que la eliminación del sistema de grados no acarreó consecuencia alguna en este contexto. Esto, porque el delito excluido sigue siendo el mismo: homicidio negligente por causar una muerte al conducir un vehículo de motor mediando claro menosprecio de la seguridad de los demás. Además, precisó que el principio de especialidad requiere dar primacía a la Ley de Sentencia Suspendida sobre lo dispuesto en el Artículo 64 del Código Penal, supra.

[2] Véase Francisco Muñoz Conde & Mercedes García Arán, Derecho Penal: Parte General, Valencia, Tirant lo Blanch, 6ta ed., 2007, pág. 97 ("El principio de legalidad es el principal límite impuesto por las exigencias del Estado de Derecho al ejercicio de la potestad punitiva e incluye una serie de garantías para los ciudadanos que genéricamente pueden reconducirse a la

establece que no se castigará una conducta, o se impondrá una pena, si las prohibiciones y penas no están previamente establecidas en la ley. Luis E. Chiesa Aponte, Derecho Penal Sustantivo, Publicaciones J.T.S., 2da ed., 2013, pág. 42; Pueblo v. Negrón Nazario, 191 DPR 720, 737-738 (2014). Es decir, ningún delito, ninguna pena sin ley previa (*nullum crimen nulla poena sine lege*).[3] En nuestro ordenamiento este principio tiene naturaleza estatutaria.[4] Así, el Artículo 2 del Código Penal dispone:

> No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos.
> No se podrán crear ni imponer por analogía delitos, penas ni medidas de seguridad. 33 LPRA sec. 5002.

Reconocer sus diversos fundamentos permite precisar en cuáles escenarios aplica. Los principales son: "(1) la limitación de la arbitrariedad, (2) la separación de poderes, (3) la prevención general, y (4) el principio de culpabilidad". Chiesa Aponte, op. cit., pág. 43. El primero es evidente, si una conducta o su pena no estuvieran

---

imposibilidad de que el Estado intervenga penalmente más allá de lo que le permite la ley".).
[3] Santiago Mir Puig, Derecho Penal: Parte General, Barcelona, Ed. Reppertor, 8va ed., 2008, pág. 105 (discutiendo el origen y sentido del principio de legalidad).
[4] Al tener base en la ley -y no en la Constitución- nuestro principio de legalidad tiene aplicabilidad limitada. Esto se debe a que "[l]as facultades y prerrogativas de la Asamblea Legislativa solamente pueden ser limitadas en virtud de la Constitución". Chiesa Aponte, op. cit., pág. 51. Es decir, como el principio de legalidad no tiene rango constitucional, algunas de sus garantías no tienen el alcance que tienen en otros ordenamientos, pues el principio de legalidad con rango estatutario no aplica a leyes aprobadas con posterioridad al principio de legalidad. Íd., pág. 53; véase además Antonio Bascuñán, Derecho Penal, 70 Rev. Jur. UPR 529, 529-535 (2000) (discutiendo la naturaleza estatutaria de nuestro principio de legalidad y sus consecuencias).

claramente establecidas se facilitaría su aplicación arbitraria, tanto por la Rama Ejecutiva como por la Judicial.[5] El segundo es uno *democrático* o *político*, pues se entiende que es la Rama Legislativa, y no la Judicial, quien tiene la facultad exclusiva de criminalizar una conducta.[6] Al tercero lo podemos llamar uno de *coacción psicológica*, pues la pena cumple su función preventiva si la persona está advertida de que su conducta está prohibida y la pena que acarrea.[7] Por último, si la ley castiga al "culpable", este reproche solo se logra si éste conocía que su conducta estaba prohibida.[8]

No todos los propósitos están presentes en todas las garantías. Además, en ocasiones éstos fundamentos pueden entrar en conflicto. Sin embargo, ser conscientes de los distintos intereses que persigue el principio de legalidad permite delimitar sus exigencias.[9] Conceptualmente, las cuatro garantías específicas de este principio son: (1) prohibición de crear delitos nuevos por jurisprudencia (*lex scripta*), (2) prohibición de crear delitos y penas por analogía (*lex stricta*), (3) prohibición de retroactividad (*lex praevia*), y (4) prohibición de indeterminación en las leyes penales (*lex certa*). Antonio Bascuñán, Derecho Penal, 69 Rev. Jur. UPR 655, 655-56 (2000); Chiesa Aponte, op. cit., págs. 44-50;

---

[5] Fulgencio Madrid Conesa, La Legalidad del Delito, Universidad de Valencia, 1983, págs. 29-36; Günther Jakobs, Derecho Penal: Parte General, Madrid, Marcial Pons, 1997, pág. 79.

[6] Madrid Conesa, op. cit., págs. 17-22; Enrique Bacigalupo, Derecho Penal: Parte General, Buenos Aires, Ed. Hammurabi, 2da ed., 1999, págs. 106-107; Jakobs, op. cit., pág. 81; véase además Pueblo v. Martínez Torres, 116 DPR 793, 800 (1986).

[7] Bacigalupo, op. cit., págs. 103-104; Jakobs, op. cit., pág. 79.

[8] Madrid Conesa, op. cit., págs. 22-29, Bacigalupo, op. cit., págs. 106-107; Jakobs, op. cit., pág. 80.

[9] Madrid Conesa, op. cit., pág. 8 ("según […] el principio de legalidad tenga un fundamento u otro, así serán las consecuencias que para el alcance de los distintos principios encuadrados en el mismo se den".).

Dora Nevares Muñiz, Derecho Penal Puertorriqueño: Parte General, 7ma ed., 2015, págs. 82-83.

Como vimos, una de las garantías del principio de legalidad es la prohibición de la analogía para crear delitos y penas que sean desfavorables al acusado. Pueblo v. Negrón Nazario, supra, pág. 738. De tal modo, no se permite aplicar una prohibición o pena establecida a un caso semejante pero no comprendido en la ley, pues conllevaría crear penas y delitos. Íd., págs. 739-740.[10] Prohibir este tipo de interpretación se justifica porque su aplicación podría ser arbitraria, le corresponde al legislador establecer la prohibición y tanto la prevención como la reprochabilidad es limitada si la aplicación es imprevisible.[11]

Si bien podemos recitar lo que está prohibido y comprender sus justificaciones, aplicarla a un caso concreto puede resultar difícil. Más aún si se aplica la prohibición de forma mecánica. Debemos recordar que, en el sentido amplio de la lógica jurídica, "toda interpretación requiere analogía", de modo que "la prohibición de la analogía se debería entender como la exclusión de la analogía 'con el fin de crear nuevo derecho' con lo que la reducción del significado de la prohibición es indudable". Enrique Bacigalupo, Derecho Penal: Parte General, Buenos Aires, Ed. Hammurabi, 2da ed., 1999, págs. 106-107 (cita omitida).

---

[10] Véanse Muñoz Conde & García Arán, op. cit., pág. 120 ("La analogía consiste en aplicar la ley a supuestos no contemplados en ella pero muy similares (análogos) a los que la ley describe"); Madrid Conesa, op. cit., pág. 59 ("Se suele definir la analogía como la aplicación a un caso no previsto en la ley de una norma extraída de la misma ley (analogía legis) o del ordenamiento jurídico (analogía iuris").").
[11] Véase Íd., págs. 59-62.

Lo que está vedado es la **aplicación analógica de la ley**; esto es, "que, una vez interpretada la ley (es decir, una vez establecidos los supuestos que contiene), se **extienden sus consecuencias (se aplican) a otros supuestos no contenidos, pero similares o análogos**". Francisco Muñoz Conde & Mercedes García Arán, Derecho Penal: Parte General, Valencia, Tirant lo Blanch, 6ta ed., 2007, pág. 120.

El caso más reciente sobre el tema ilustra ejemplarmente en qué consiste una aplicación analógica prohibida. En Pueblo v. Negrón Nazario, supra, un policía, fuera de horas laborables, utilizó su arma de fuego para dispararle a una persona. El Estado le imputó, entre otros delitos, violar el Artículo 5.04 de la Ley de Armas, 24 LPRA sec. 458, el cual tipifica como delito la portación y uso de arma de fuego sin licencia. Aclaramos que no se le podía acusar de portar un arma de fuego sin licencia, porque por su función éste estaba autorizado a portar su arma de reglamento en todo lugar y momento. Concluimos que "[t]al conducta, *aunque similar*, no es paralela a los hechos constitutivos del delito que el legislador tipificó mediante el mencionado Art. 5.04". Íd., págs. 758-59. De este modo, lo solicitado por el Estado era una aplicación analógica impermisible, pues tendría el efecto de **crear derecho** (en este caso un delito) sin que estuviera contemplado previamente en la ley.

Por otro lado, en Pueblo v. Negrón Nazario, supra, pág. 739, finalmente aclaramos que el principio de legalidad **no exige** de antemano una interpretación restrictiva de la ley penal. De ahí que, "ante una duda de qué es lo que constituye

delito según determinada disposición penal, el tribunal debe aplicar los principios de hermenéutica correspondientes, lo cual podría resultar en alcanzar una interpretación restrictiva o extensiva del delito". Íd.[12] Consecuente con lo anterior, no debemos confundir la prohibición a la aplicación analógica (propia del principio de legalidad) con la interpretación restrictiva de los estatutos penales (originaria del derecho común anglosajón, aunque actualmente está en desuso total).[13]

B. Principio de especialidad

Por otro lado, el principio de especialidad es una "regla de interpretación estatutaria que toma en cuenta la relación de jerarquía en que se hallan las distintas normas que concurren en su aplicación a un hecho delictivo". Pueblo v. Ramos Rivas, 171 DPR 826, 836-37 (2007). Aplica, por ejemplo, para delimitar la relación entre una ley especial y otra general. Íd., pág. 836. Por consiguiente, en casos donde dos disposiciones de ley aparentan regir la controversia, "aplica la ley especial, según la máxima *lex specilais derogat legi genereali*, pues se parte del supuesto de que la finalidad de una regulación especial es excluir o desplazar la general". Íd., pág. 837. Nuestro ordenamiento reconoce este principio en el Artículo 9 del Código Penal, 33 LPRA

---

[12] Véase además Mir Puig, op. cit., pág. 115 ("La interpretación es lícita aunque resulte extensiva de delitos o penas").

[13] Ernesto L. Chiesa Aponte & Luis E. Chiesa Aponte, Derecho Penal, 73 Rev. Jur. UPR 671, 680-683 (2004) (donde se discute el origen y fundamentos de ambas reglas); véase además Bascuñán, supra, pág. 532 ("En lo que respecta a la prohibición de la extensión de la norma penal por analogía, es un error extendido considerar que ella se basa en un principio más general, consistente en un mandato de interpretación restrictiva de las disposiciones punitivas".).

sec. 5009, que dispone que "[l]a disposición especial prevalece sobre la general". Por lo tanto, "de haber conflicto entre una ley especial y el Código Penal, se aplicará el principio que requiere que prevalezca la ley especial, salvo que exista expresión legislativa al efecto contrario". Nevares Muñiz, op. cit., pág. 134.

C. Ley de Sentencia Suspendida

En consideración al principio de especialidad y a la controversia de autos, conviene citar la disposición especial que nos ocupa. El Artículo 2 de la Ley de Sentencia Suspendida faculta al foro primario a suspender los efectos de una pena de reclusión, pero establece también varias excepciones:

> **El Tribunal de Primera Instancia podrá suspender los efectos de la sentencia de reclusión en todo caso de delito grave y todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción, que no fuere**:
> (a) Delito grave con pena en las clasificaciones de primer grado o segundo grado según tipificado en el nuevo Código Penal del Estado Libre Asociado de Puerto Rico o en una ley especial.
> (b) **Uno de los siguientes delitos graves con pena en la clasificación de tercer grado**: actos lascivos cuando la víctima sea menor de catorce (14) años, producción de pornografía infantil, posesión y distribución de pornografía infantil, utilización de un menor para pornografía infantil, secuestro, escalamiento, robo, estrago, **homicidio negligente**, soborno, oferta de soborno, apropiación ilegal de propiedad o fondos públicos, enriquecimiento injustificado, y malversación de fondos públicos.
> . . . .
> Con arreglo a lo anteriormente dispuesto, el tribunal sentenciador podrá también suspender los efectos de la sentencia de reclusión que se hubiere dictado en todo caso de homicidio negligente en su modalidad menos grave que no hubiere sido ocasionado mientras se conducía un vehículo en estado de embriaguez. 34 LPRA sec. 1027.

En resumidas cuentas, autoriza por un lado la otorgación de la sentencia suspendida, pero también excluye algunos delitos como, por ejemplo, ciertos delitos con clasificación de tercer grado. Entre éstos, incluye expresamente el homicidio negligente. Finalmente, cabe destacar que en Pueblo v. Bonilla Vázquez, 148 DPR 486 (1999), reconocimos que las garantías del principio de legalidad aplican si se pretende excluir del beneficio de sentencia suspendida delitos que no están contemplados en la ley.

D. Artículo 64 del Código Penal

Por otro lado, el Artículo 64 del Código Penal, enmendado por la Ley Núm. 246-2014, es la disposición general en controversia. Su segundo párrafo establece:

> En los delitos graves cuyo término de reclusión señalado en el tipo sea de ocho (8) años o menos y en las tentativas de delitos, cuya pena sea igual o menor de ocho (8) años y en los tipos negligentes, el tribunal puede imponer una o cualquier combinación de las siguientes penas en sustitución de la pena de reclusión: restricción terapéutica, restricción domiciliaria, libertad a prueba o servicios comunitarios. 33 LPRA sec. 5097.

Vemos, pues, que en las circunstancias descritas el tribunal puede, a su discreción, conceder varios remedios alternativos a la pena de reclusión, entre ellos la libertad a prueba.

III

El Estado sostiene que el Tribunal de Apelaciones erró al resolver que acoger su posición violaría el principio de legalidad porque sería una interpretación analógica de la ley penal. Además, critica la aplicación del principio de especialidad para determinar que era necesario recurrir al Artículo 64 del Código Penal. Veamos por separado cada uno de

esos señalamientos.

A. Aplicación errada del principio de legalidad

El Tribunal de Apelaciones destacó la discrepancia entre la Ley de Sentencia Suspendida, que se basa en un sistema de grados, y el Código Penal de 2012, que eliminó ese sistema y adoptó una clasificación de grave/menos grave. Posteriormente, señaló que la prohibición de la analogía aplica cuando se intenta excluir delitos del beneficio de sentencia suspendida. Analizando ambas proposiciones conjuntamente, concluyó que el cambio paradigmático del Código Penal de 2012 tuvo el efecto de que la Ley de Sentencia Suspendida ya no excluye de sus beneficios al delito de homicidio negligente, pues lo que excluía era el delito de homicidio negligente de tercer grado. De este modo, incluir el actual delito de homicidio negligente en las exclusiones de la Ley de Sentencia Suspendida violaría el principio de legalidad.

Las dos proposiciones del Tribunal de Apelaciones son correctas: (1) el Código Penal eliminó el sistema de grados y (2) está prohibido aplicar analógicamente una exclusión de la Ley de Sentencia Suspendida para lograr que una conducta semejante pero no provista también esté excluida. El problema radicó en su aplicación, pues concluyó erróneamente que el Estado pretendía lograr una aplicación analógica impermisible. Para sostener lo anterior resulta necesario examinar el homicidio negligente que era excluido de la Ley de Sentencia Suspendida y compararlo con el homicidio

negligente del Código Penal de 2012.

i. Tipificación y clasificación de homicidio negligente

En su Artículo 109, titulado *Homicidio Negligente*, el Código Penal de 2004 tipificaba el delito de la siguiente forma:

> Toda persona que ocasione la muerte a otra por negligencia incurrirá en delito menos grave, pero se le impondrá la pena de delito grave de cuarto grado.
>
> Cuando la muerte se ocasione al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, sustancias controladas o **con claro menosprecio de la seguridad de los demás**; o al apuntar y disparar con un arma de fuego hacia un punto indeterminado, incurrirá en delito grave de tercer grado. 33 LPRA sec. 4737 (derogado).

Por lo tanto, una de las conductas tipificadas como homicidio negligente consistía en ocasionar la muerte de otra persona mientras se conducía con claro menosprecio de la seguridad de los demás. Esta conducta era clasificada como delito grave de tercer grado, lo cual implicaba que acarreaba una pena de reclusión "que no [podía] ser menor de tres (3) años un (1) día ni mayor de ocho (8) años". 33 LPRA sec. 4694(c) (derogado).

Posteriormente, la Asamblea Legislativa aprobó el Código Penal de 2012, derogó el Código Penal de 2004 y adoptó un sistema de penas fijas. Conforme al nuevo cuerpo legal, el Artículo 96 del Código Penal de 2012 (*Homicidio Negligente*), supra, dejó de hacer referencia al sistema de grados. Sin embargo, con relación al caso de autos, la conducta tipificada es idéntica:

>       Toda persona que ocasione la muerte a otra por
> negligencia incurrirá en delito menos grave, pero
> se le impondrá pena de reclusión por un término
> fijo de tres (3) años.
>
>       **Cuando la muerte se ocasione al conducir un
> vehículo de motor con negligencia que demuestre
> claro menosprecio de la seguridad de los demás,**
> incurrirá en delito grave y se le impondrá pena de
> reclusión por un término fijo de ocho (8) años.
> 33 LPRA sec. 5145 (énfasis suplido).

Tanto el Artículo 109 del Código Penal de 2004 como el Artículo 96 del Código Penal de 2012 tipifican como modalidad agravada de homicidio negligente ocasionar la muerte de una persona al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás. Además, la clasificación es la misma: delito grave. Las únicas diferencias son que ya no se apellida **tercer grado** y la pena dispuesta.

Ningunas de las diferencias son relevantes para fines de la prohibición a la aplicación analógica que establece el principio de legalidad. Lo que está prohibido es la analogía que pretenda crear, al decir de Enrique Bacigalupo, "nuevo derecho". Enrique Bacigalupo, op. cit., pág. 130. Esto es, que se extiendan las consecuencias de una disposición penal a "otros supuestos no contenidos, pero similares o análogos". Muñoz Conde & García Arán, op. cit., pág. 120. Como hemos visto, aquí no se trata de supuestos similares o análogos, **sino de exactamente la misma conducta.** Por consiguiente, no se está añadiendo una exclusión (i.e., creando derecho), meramente se está exceptuando una de las conductas que el legislador excluyó del beneficio de sentencia suspendida:

cometer un homicidio negligente al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás.

Por otra parte, el recurrido solicita una interpretación restrictiva de la ley penal. No obstante, según discutimos, la interpretación restrictiva no es, de antemano, una exigencia del principio de legalidad. Pueblo v. Negrón Nazario, supra. De hecho, el Artículo 13 del Código Penal, 33 LPRA sec. 5013, rechaza expresamente esa regla de interpretación al disponer "[s]i el lenguaje empleado en un estatuto es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los principios establecidos en este Código". Si bien el Tribunal de Apelaciones reconoció que nuestro ordenamiento no requiere de antemano una interpretación restrictiva, su razonamiento se asemejó más a ésta que a la exigencia del principio de legalidad.

Vemos, pues, que no existe base alguna para concluir que el homicidio negligente de tercer grado con pena de tres años a ocho años podía estar excluido del beneficio de sentencia suspendida, pero no lo está el homicidio negligente actual. Las justificaciones del principio de legalidad no se ven afectadas por nuestra conclusión. En primer lugar, la exclusión en casos de homicidio negligente es una norma uniforme que no se presta para aplicaciones arbitrarias. No estamos ante un caso de legislación judicial, pues entendemos que lo esencial es la conducta que el legislador quiso excluir del beneficio. Finalmente, la coacción psicológica y el principio de culpabilidad no se ven afectados, pues consideramos que surgía de la Ley de Sentencia Suspendida que

conductas como la incurrida por el recurrido serían excluidas.

Aunque varias leyes penales especiales aún hacen referencia al sistema de grados de severidad, esto de por sí no puede convertir en inoperantes sus disposiciones. Más aún cuando, como en el caso ante nosotros, la conducta delictiva pertinente no ha variado de un Código Penal a otro. Por consiguiente, rechazamos que la eliminación del sistema de grados por el Código Penal de 2012 implicó, por virtud del principio de legalidad, la eliminación de la exclusión que hace la Ley de Sentencia Suspendida del delito de homicidio negligente.

### ii. Pueblo v. Bonilla Vázquez

Por otro lado, el Tribunal de Apelaciones también descansó en nuestro precedente en Pueblo v. Bonilla Vázquez, supra, para llegar a su conclusión. Sin embargo, ese caso es claramente distinguible al presente. En Pueblo v. Bonilla Vázquez, supra, la Ley de Sentencia Suspendida excluía de sus beneficios el delito de homicidio involuntario. A su vez, existían dos artículos del Código Penal de 1974 sobre conductas semejantes, el Artículo 86 (titulado *Homicidio involuntario*) y el Artículo 87 (titulado *Imprudencia crasa o temeraria al conducir vehículo de motor*). Luego de un análisis exhaustivo del historial legislativo de la Ley de Sentencia Suspendida, este Tribunal concluyó que el delito de imprudencia crasa o temeraria al conducir un vehículo de motor no era uno de los excluidos de la Ley de Sentencia Suspendida. Sostuvo, pues, que excluirlo judicialmente

violaría el principio de legalidad en su vertiente de prohibición a la interpretación analógica. En cambio, según discutimos, aquí la conducta excluida es la misma: ocasionar la muerte a una persona al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás.

B. Ley de Sentencia Suspendida es la ley aplicable

Por último, como el Tribunal de Apelaciones concluyó que no aplicaba la exclusión, acudió al Artículo 64 del Código Penal de 2012 para resolver que el foro primario tenía la facultad de suspender la pena de reclusión. Ese Artículo 64, enmendado en el 2014, establece como norma general que los delitos descritos disfrutarán de las penas alternativas allí dispuestas. Ahora bien, las disposiciones de la Parte General del Código Penal pueden estar limitadas o ser inoperantes en virtud de una ley especial que prevalece. Según vimos, el principio de especialidad reconoce que una regulación especial puede excluir o desplazar la regla general. Pueblo v. Ramos Rivas, supra. Por lo tanto, en este caso lo dispuesto por el Artículo 64 sobre libertad a prueba está desplazado por el Artículo 2 de la Ley de Sentencia Suspendida, que excluye al homicidio negligente concernido.[14]

En resumen, concluimos que la Ley de Sentencia Suspendida es una ley especial que excluye el delito de

---

[14] Consciente de lo anterior, en el 2015 se presentó un proyecto de ley para atemperar la Ley de Sentencia Suspendida al nuevo Código Penal y al Artículo 64, según enmendado. De este modo un homicidio negligente con pena de ocho años, como el presente, disfrutaría del beneficio de sentencia suspendida. Sin embargo, el mismo no se convirtió en ley, así que esa modalidad de homicidio negligente sigue excluida del beneficio de sentencia suspendida. Véase P. de la C. 2458 de 11 de mayo de 2015. Ahora bien, conforme con el Artículo 64 del Código Penal, supra, el tribunal puede conceder las siguientes penas alternativas a la reclusión: restricción terapéutica, restricción domiciliaria o servicios comunitarios.

homicidio negligente clasificado como delito grave. El Tribunal de Apelaciones erró al aplicar la prohibición contra la analogía, pues no consideró que la conducta proscrita es exactamente la misma, de modo que no estamos ante un supuesto vedado por el principio de legalidad.

IV

Por los fundamentos antes expresados, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que vuelva a sentenciar al recurrido conforme con lo resuelto por este Tribunal y con el Artículo 64 del Código Penal, según enmendado.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                CC-2016-0710         *Certiorari*

David Plaza Plaza

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que vuelva a sentenciar al recurrido conforme con lo resuelto por este Tribunal y con el Artículo 64 del Código Penal, según enmendado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente sin opinión escrita.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo